IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KREMERS URBAN, LLC and SCHWARZ PHARMA MANUFACTURING, INC., | ) ) ) | |
| Plaintiffs, | ) ) ) | Civil Action No. |
| v. | ) ) | |
| BRAINTREE LABORATORIES, INC., | ) ) | |
| Defendant. | ) ) | |

## COMPLAINT

Plaintiffs, Kremers Urban, LLC ("KU") and Schwarz Pharma Manufacturing, Inc. ("SPMI"), for their Complaint, allege as follows:

### Parties

1.    Plaintiff KU is a Delaware limited liability company, and has a principal place of business at 6140 West Executive Drive, Mequon, Wisconsin 53092-4467.

2.    Plaintiff SPMI is an Indiana corporation, and has a principal place of business at 1101 C Avenue West, Seymour, Indiana 47274.

3.    Defendant Braintree Laboratories, Inc. ("Braintree") is a Massachusetts corporation with its principal place of business in Braintree, Massachusetts.

### Jurisdiction and Venue

4.    Plaintiffs' complaint arises under the antitrust laws of the United States, 15 U.S.C. § 2, and the common law. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1337 and 1367 and 15 U.S.C. § 2.

5.     Venue within this jurisdiction is proper under 28 U.S.C. § 1391 (b) and (c) and 15 U.S.C. § 22. Personal jurisdiction over Braintree comports with the United States Constitution and § 3104 of the Delaware Code because Braintree has agents, transacts business and is found within this judicial district. Plaintiffs' claims arise in part within this district, and Braintree's unlawful conduct has had harmful effects in this district.

## Background

6.     Schwarz Pharma, Inc. ("SPI") is the owner of an approved Abbreviated New Drug Application ("ANDA") for GlycoLax™, a polyethylene glycol product used for the treatment of constipation.

7.     SPI's indirect, wholly-owned subsidiary, SPMI, manufactures GlycoLax™, and its indirect, wholly-owned subsidiary, KU, distributes and sells GlycoLax™ throughout the United States. As such, both SPMI and KU are in direct competition with Braintree in the United States for the manufacture and sale of polyethylene glycol 3350 for the treatment of constipation.

8.     SPI is the sponsor of ANDA 76-652, submitted on January 30, 2003 to the Food and Drug Administration ("FDA"), for a generic version of Braintree Laboratories' New Drug Application ("NDA") 20-698 for MiraLax™, polyethylene glycol 3350.

9.     In accordance with 21 U.S.C. § 355(j)(2)(B)(i) and (ii) (sections 505(j)(2)(B)(i) and (ii) of the Food and Drug Cosmetic Act) and the FDA's regulations under 21 CFR § 314.95, SPI sent Braintree a Paragraph IV Certification Letter on April 1, 2003.

10.    On May 16, 2003, Braintree filed suit against SPI for infringement of claim 33 of United States Patent No. 5,710,183 ("the '183 patent") to Halow, in the United States District Court for the District of Delaware.

11.     On September 3, 2003, 110 days after it filed the action, Braintree finally
served the complaint on SPI.

12.     On information and belief, at the time of the filing of the above-described
patent infringement lawsuit, and at the time it finally served the complaint on SPI, Braintree
knew or should have known that the '183 patent was invalid under 35 U.S.C §§ 102, 103 and
112, unenforceable and/or not infringed by the GlycoLax™ product. In particular, Braintree
knew or should have known that (a) the Patent Examiner's objections to the claims that
ultimately issued as the '183 patent were overcome only by representations from the inventor,
George Halow, or person(s) acting on his behalf, that it was the ratio of polyethylene glycol
("PEG") to fiber that was "critical" to the patent application and such ratio was not taught or
otherwise rendered obvious by the prior art; (b) the claims of the '183 patent, if read to cover
pure PEG compositions, calls into question the *bona fides* upon which the patent was issued; (c)
if construed to cover PEG alone, claim 33 is invalid in view of the prior art, including, but not
limited to, Fordtran, Andorsky and Fossel references; (d) if construed to cover PEG alone, there
were public uses of the patented subject matter outside the one year grace period set forth in 35
U.S.C. §102(b); (e) if construed to cover PEG alone, there was no disclosure of PEG-alone
compositions, or their preparation or application, in accordance with the requirements of 35
U.S.C. §112; and (f) if construed to cover PEG alone, the use of compositions comprising PEG
to treat constipation was known for over twenty years prior to the filing of the Halow application
on July 14, 1995. Alternatively, Braintree knew or should have known both that claim 33 cannot
be construed to cover the use of PEG alone and that GlycoLax™ is comprised only of PEG, not a
combination of PEG and fiber.

13.    On information and belief, Braintree also knew or should have known the following at the time it filed and subsequently served SPI with the above-referenced complaint:

a.    During the prosecution of the '183 patent, the Examiner issued an Office Action dated February 25, 1997, rejecting claims 1-33 over Kais *et al.* and Powell et al. in combination with Parker, Kimura *et al.* and Fordtran, stating the references, in combination, teach polyethylene glycol with a fiber bulking agent.

b.    The Examiner separately rejected claim 34 as obvious over Kimura or Fordtran, as both references teach compositions containing polyethylene glycol to improve bowel movement.

c.    Claim 34, which ultimately issued as claim 33, claims a method for improving bowel function in a mammal, comprising orally administering polyethylene glycol to the mammal, in an amount sufficient to improve bowel motility, stool formation or both.

d.    The Applicant, Halow, and/or individuals acting on his behalf, represented to the United States Patent and Trademark Office (the "Patent Office"), in a response dated May 27, 1997, that claims 1-34 "provide a unique composition containing polyethylene glycol and a fiber bulking agent wherein the PEG is present in a weight ratio of polyethylene glycol to fiber of from about 1 to 2 to no more than about 7 to 1. These percentages are critical and nowhere are they discussed or taught in the base references or the alleged equivalence teaching set forth by the secondary references."

4

e.  Additionally Halow, and/or individuals acting on his behalf, emphasized in the response the critical nature of the ratio of polyethylene glycol and fiber by explaining that if "the PEG to fiber ratio is too low, rapid onset of activity of the products of the invention drops off and begins to approach the slow onset of a fiber based bulk laxative of the prior art.  If the PEG to fiber ratio is too high, the volume of composition which must be ingested to obtain the benefits of the fiber content may be too high and the excess of PEG may result in undesirable side effects, such as those associated with PEG based bowel lavage compositions, such as set forth in Kimura et al or Fordtran."

f.  The Examiner issued a Notice of Allowance reasoning that, "the claims are considered to distinguish over the prior art since there is no teaching of the ratio for the two active ingredients."

g.  If Dr. Halow believed his claimed invention covered the use of PEG alone to treat constipation, as reflected in issued claim 33, Halow made no effort to correct the misrepresentations and false statements made during prosecution concerning the criticality of the PEG to fiber ratio.  Claim 33, in fact, was never corrected in accordance with applicant's statements, and therefore does not claim the purported invention.

14.  On December 23, 2003, SPI received a tentative approval letter from the FDA for its ANDA for GlycoLax™, which approval would have been final but for Braintree's frivolous lawsuit claiming infringement by GlycoLax™ of claim 33 of the '183 patent.

15.    On May 21, 2004, in a letter directed to SPI,  Braintree confirmed its decision to dismiss its patent infringement claim with prejudice and without costs.  In its letter, Braintree also confirmed its offer to SPI — made during a meeting between Braintree's counsel and SPI's counsel on April 12, 2004 — of a royalty-free license to SPI under claim 33 of the '183 patent.

16.    On May 24, 2004, Braintree filed "Plaintiff's Motion for Voluntary Dismissal of Its Complaint and Motion to Dismiss Defendant's First Counter Claim as Moot."

17.    On June 3, 2004, the Court dismissed Braintree's Complaint with prejudice and SPI's First Counterclaim as moot.

18.    On July 2, 2004, the FDA gave final approval of SPI's ANDA for its GlycoLax™ product, and KU (on the same day) began offering to sell GlycoLax™.

19.    On or about July 8, 2004, KU began shipping GlycoLax™ to customers in the United States.

### Relevant Lines of Commerce

20.    At all times relevant to the claims in this Complaint, Braintree manufactured and sold MiraLax™ in interstate commerce in the United States.

21.    The relevant product market is polyethylene glycol 3350 laxatives.

22.    The relevant geographic market is the United States.

23.    The production and sale of polyethylene glycol 3350 laxatives in the United States constitutes a separate and distinct relevant market.  This is a well-defined antitrust market because polyethylene glycol 3350 laxatives are sufficiently differentiated from other types of laxatives such that, for example, Braintree, when it was the sole supplier of polyethylene glycol 3350 laxatives, could increase price above the competitive level without losing so many sales as to make its price increase unprofitable.

24.    By virtue of its fraudulently obtained claim 33 of the '183 patent, Braintree had monopoly power in the market for polyethylene glycol 3350 laxatives in the United States, effectively holding, at the time of filing Braintree's original complaint and the maintenance of its suit, 100% of the relevant market.

25.    On information and belief, the entry of the GlycoLax™ polyethylene glycol 3350 product into the market presented a serious competitive threat to Braintree's profits and monopoly position because the GlycoLax™ product provided a lower-priced, reasonably interchangeable, generic alternative to Braintree's MiraLax™ product.

26.    Braintree improperly prolonged its domination of the relevant market by filing and maintaining the above-described patent infringement suit with the knowledge that at least claim 33 of the '183 patent is invalid, unenforceable and/or not infringed by plaintiffs' GlycoLax™ product.

27.    At the time Braintree filed and served its frivolous patent infringement complaint, substantial barriers to entry into the relevant market for polyethylene glycol 3350 laxatives, including regulatory barriers and Braintree's institution of its baseless patent infringement litigation, as described herein, made timely and sufficient entry into the relevant market unlikely.

### Count One: Monopolization/Attempted Monopolization in Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, by Fraud on the United States Patent and Trademark Office

28.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 27 as though they were fully set forth herein.

29.    As indicated above, during the prosecution of the '183 patent, neither Halow nor anyone acting on his behalf (collectively "Halow"), ever corrected claim 33 of the '183 patent, i.e. then pending claim 34 covering the use of PEG alone without fiber, to make it

consistent with his representations to the Patent Office regarding the "critical" nature of the ratio

of polyethylene glycol and fiber to his claimed invention, even though those representations were

material to patentability and were the predicate for the Examiner's Notice of Allowance of all

claims of the '183 patent.

30.    Upon information and belief, Halow knew that claim 33 was invalid over

the prior art, that his statements in the Office Action response to the Examiner in so far as they

related to claim 33 were false and misleading, and that he was not in possession of the subject

matter recited in claim 33.

31.    On information and belief, Halow, with the specific intent of defrauding

the Patent Office, knowingly and willingfully refrained from any effort to correct the

misrepresentations and false statements made during prosecution with regard to claim 33 or to

correct claim 33 after the Examiner's Notice of Allowance or prior to issuance, which Notice

demonstrated that the Examiner had, in fact, relied upon Halow's misrepresentations and false

statements. But for such knowing and willful misconduct, claim 33 (then claim 34) would not

have issued. Accordingly, claim 33 of the '183 patent was procured by fraud on the Patent

Office and is unenforceable. On information and belief, Braintree knew or should have known at

the time it filed and served the above-referenced complaint of (a) Halow's misrepresentations to

the Examiner regarding claim 33, (b) Halow's failure to correct claim 33, (c) the defects in the

'183 patent, and (d) the resulting unenforceability of the '183 patent. Additionally, Braintree

knew or should have known at the time it filed and served the above-referenced complaint that

claim 33 is invalid under 35 U.S.C. §§ 102, 103 and 112, and not infringed by plaintiffs'

GlycoLax™ product.

32.    On information and belief, the '183 patent would not have issued to anyone but for Halow's fraudulent misconduct before the Patent Office.

33.    On information and belief, Braintree knew or should have known at the time of the filing of the above-described suit and service of the complaint on SPI, that claim 33 of the '183 patent is invalid, unenforceable and not infringed by plaintiffs' GlycoLax™ product for the reasons described above, yet deliberately impeded SPMI's and KU's efforts to manufacture and sell GlycoLax™ by filing and serving its baseless complaint and maintaining suit against SPI for more than a year.

34.    Braintree filed its lawsuit to improperly maintain its monopoly over the relevant market by eliminating GlycoLax™ from competing in that market, and it succeeded in doing so during the pendency of the lawsuit and for a period thereafter. Alternatively, Braintree filed its frivolous lawsuit with the specific intent to monopolize the relevant market, and its frivolous lawsuit posed a dangerous probability that its monopolization would succeed.

35.    Braintree's conduct constituted unlawful monopolization of, or an unlawful attempt to monopolize, the relevant market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

36.    By filing and maintaining its frivolous suit, Braintree adversely affected SPMI's and KU's position in the marketplace by preventing them from manufacturing and selling GlycoLax™. By its actions, Braintree injured SPMI and KU in their business and property, causing them to incur substantial economic losses in the marketplace.

37.    Braintree's action in wrongfully bringing and maintaining the patent infringement litigation described above was also substantially injurious to consumers, who were

9

deprived of less expensive forms of PEG laxatives, and affected a substantial volume of

interstate commerce in the United States, including in the state of Delaware.

### Count Two: Monopolization/Attempted Monopolization in Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, by Sham Litigation

38.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 37 as

though they were fully set forth herein.

39.    Even if Halow's conduct before the Patent Office did not rise to the level

of actual fraud, it nonetheless constituted inequitable conduct, which, on information and belief,

Braintree knew or should have known , prior to the institution of its lawsuit against, and the

service of its complaint on SPI, rendered the '183 patent unenforceable. As of that time,

Braintree also knew or should have known that claim 33 of the '183 patent was invalid under 35

U.S.C. §§ 102, 103 and 112, and not infringed by plaintiffs' GlycoLax™ product. Despite this

knowledge, Braintree brought its baseless suit against plaintiffs' parent, SPI, preventing plaintiffs

from manufacturing and selling GlycoLax™.

40.    Because Braintree knew or should have known that claim 33 of the '183

patent was invalid, unenforceable and/or not infringed by GlycoLax™ for the reasons explained

above, Braintree's patent infringement suit was (a) objectively baseless in the sense that no

reasonable litigant could realistically expect to win on the merits, and (b) subjectively baseless in

that it was brought and maintained to impose anti-competitive injury rather than to obtain a

justifiable legal remedy.

41.    Braintree filed its frivolous lawsuit to maintain its monopoly over the

relevant market by eliminating GlycoLax™ from competing in that market, and it succeeded in

doing so during the pendency of its lawsuit and for a period thereafter. Alternatively, Braintree

filed and maintained its frivolous lawsuit with the specific intent to monopolize the relevant

market and its objectively and subjectively baseless lawsuit posed a dangerous probability that its monopolization would succeed.

42.    Braintree's conduct constituted unlawful monopolization of, or an unlawful attempt to monopolize, the relevant market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

43.    By filing and maintaining its frivolous suit, Braintree adversely affected SPMI's and KU's position in the marketplace by preventing them from manufacturing and selling GlycoLax™. By its actions, Braintree injured SPMI and KU in their business and property, causing them to incur substantial economic losses in the marketplace.

44.    Braintree's action in wrongfully bringing and maintaining the patent infringement litigation described above was also substantially injurious to consumers, who were deprived of less expensive forms of PEG laxatives, and affected a substantial volume of interstate commerce in the United States, including in the state of Delaware.

### Count Three:  Unfair Competition

45.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 44 as though they were fully set forth herein.

46.    KU and SPMI had a reasonable expectation of entering a valid business relationship with, among others, pharmaceutical distributors, retail pharmacies, healthcare providers, insurance providers and individuals suffering from constipation by manufacturing, distributing and selling a generic polyethylene glycol 3350 laxative product in the United States.

47.    Braintree intentionally and wrongfully interfered with KU and SPMI's business expectations by filing its objectively and subjectively baseless patent infringement lawsuit.

11

48.    Braintree understood, at the time of filing its lawsuit and the service of its complaint, that it was the exclusive manufacturer and seller of polyethylene glycol 3350 laxative products, and that it enjoyed monopoly power in the relevant market.

49.    Because Braintree knew or should have known that claim 33 of the '183 patent was invalid, unenforceable, and not infringed by plaintiffs' GlycoLax™ product, Braintree acted in bad faith, and engaged in willful and unlawful conduct that constituted an abuse of the judicial process, by bringing its baseless lawsuit in order to exclude SPMI and KU from manufacturing, distributing and selling a directly competing generic polyethylene glycol 3350 laxative product in the United States, including in the state of Delaware.

50.    Braintree knew or should have known that by filing its frivolous patent infringement action, under the provisions of 21 U.S.C. § 355(j)(5)(B)(iii), SPI's ANDA could not be approved until the date the court determined invalidity or non-infringement, the date the patent expired, or thirty months from the date Braintree received notice of the ANDA Paragraph IV certification (subject to judicial discretion), whichever occurs first, and that plaintiffs could not begin manufacturing, distributing and selling a generic polyethylene glycol 3350 laxative product until SPI's ANDA received final approval.

51.    Upon information and belief, Braintree intentionally delayed the filing of the complaint and subsequent service of the complaint upon SPI in order to delay commencement and case scheduling of Braintree's above-described patent infringement suit.

52.    Braintree's wrongful interference with KU and SPMI's business expectations through the above-described frivolous patent infringement action against SPI caused SPMI and KU monetary harm, including lost profits, from the delayed introduction of Glycolax™.

53.    By preventing SPMI and KU from manufacturing and selling GlycoLax™ through the institution and maintenance of its frivolous patent infringement action against plaintiffs' parent, SPI, Braintree has been unjustly enriched in its sales of Miralax™ and has acted in bad faith. Braintree's acts were willful, intentional and without privilege.

54.    By wrongfully bringing and maintaining its frivolous patent infringement action, Braintree competed unfairly against SPMI and KU. Braintree's willful, intentional and unprivileged conduct violated public policy, and was unfair, wrongful, unethical, unscrupulous and/or substantially injurious to consumers, and was designed to interfere and harm the business of its competitors, namely SPMI and KU.

### Count Four:  Tortious Interference With Business Advantage/Opportunities

55.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 54 as though they were fully set forth herein.

56.    On information and belief, Braintree was aware of the existence of a business opportunity for a manufacturer, distributor and/or seller of a generic polyethylene glycol 3350 laxative product. Moreover, on information and belief, Braintree was aware of SPMI's and KU's business advantage and opportunity as the first manufacturer, distributor and seller of a generic polyethylene glycol 3350 laxative product in the United States, including in the state of Delaware.

57.    Acting in bad faith, Braintree intentionally interfered with SPMI's and KU's business advantage and opportunities. By filing and maintaining its objectively and subjectively baseless patent infringement action against plaintiffs' parent, SPI, Braintree intentionally and unlawfully interfered with SPMI's and KU's right to manufacture, distribute and sell a generic polyethylene glycol 3350 laxative product, and SPMI's and KU's right to compete fairly with Braintree's MiraLax™ product, particularly during the period beginning

13

December 23, 2003 when SPI's tentative FDA approval of its ANDA would have been made

final but for the existence of the frivolous patent infringement action brought by Brainteee.

      58.    By filing and maintaining its meritless, sham lawsuit against SPI,

Braintree has been unjustly enriched in its sales of Miralax™.

      59.    Braintree acted in bad faith, and its acts were willful, intentional and

unprivileged. Additionally, Braintree's acts of tortious interference were the proximate cause of

damages to SPMI and KU in the form of, *inter alia*, loss of good will in the market, loss of

business opportunities with distributors, consumers and others, loss of market share, and loss of

profits from the manufacture, distribution and sale of a generic polyethylene glycol 3350 laxative

product.

### PRAYER FOR RELIEF

      WHEREFORE, plaintiffs respectfully pray for judgment:

A.    Finding that defendant has violated Section 2 of the Sherman Act, 15
U.S.C. § 2;

B.    Finding that defendant has engaged in unfair competition against
plaintiffs;

C.    Finding that defendant has tortiously interfered with plaintiffs' business
advantage and opportunities;

D.    Finding that defendant has been unjustly enriched by unlawfully keeping
plaintiffs from entering the relevant market via the manufacture and sale
of a generic polyethylene glycol 3350 laxative product;

E.    Awarding plaintiffs, on Counts One and Two, threefold their damages for
the injury to their business and property suffered by reason of Braintree's
violation of the antitrust laws, including prejudgment interest thereon, and
their costs of suit, including reasonable attorneys' fees, as provided in
Section 4 of the Clayton Act, 15 U.S.C. § 4;

F.    Awarding plaintiffs, on Counts Three and Four, their damages for
defendant's unfair competition against plaintiffs and for defendant's
tortuous interference with plaintiffs business advantages and
opportunities;

G.   Awarding plaintiffs and disgorging defendant of its unjust profits earned while unlawfully keeping plaintiffs from manufacturing and selling a generic polyethylene glycol 3350 laxative product;

H.   Awarding plaintiffs punitive damages and prejudgment interest on the compensatory damages; and

I.   Granting plaintiffs such other and further legal and equitable relief as this Court may deem just and proper.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Brian M. Poissant                        By: _____
JONES DAY                                      Philip A. Rovner (#3215)
222 East 41st Street                           Hercules Plaza
New York, New York  10019-6702                 P.O. Box 951
(212) 326-3939                                 Wilmington, Delaware  19899
                                               (302) 984-6000
Dated: October 17, 2006                        E-mail: provner@potteranderson.com

756289                                   Attorneys for Plaintiffs
                                         Kremers Urban, LLC and
                                         Schwarz Pharma Manufacturing, Inc.

JS 44  (Rev 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

KREMERS URBAN, LLC and SCHWARZ PHARMA
MANUFACTURING, INC.,

**DEFENDANTS**

BRAINTREE LABORATORIES, INC.

(b) County of Residence of First Listed Plaintiff  Ozaukee County, WI
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Norfolk, MA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

PHILIP A. ROVNER, ESQ. (#3215)
POTTER ANDERSON & CORROON LLP
P. O. BOX 951, WILMINGTON, DE 19899 (302) 984-6000
provner@potteranderson.com

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- [ ] 1  U.S. Government
  Plaintiff
- [x] 3  Federal Question
  (U.S. Government Not a Party)
- [ ] 2  U.S. Government
  Defendant
- [ ] 4  Diversity
  (Indicate Citizenship of Parties
  in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)       and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— | [ ] 620 Other Food & Drug | | [x] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Med. Malpractice | [ ] 625 Drug Related Seizure | [ ] 423 Withdrawal | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | Liability | [ ] 365 Personal Injury — | of Property 21 USC | 28 USC 157 | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Product Liability | [ ] 630 Liquor Laws | | [ ] 460 Deportation |
| & Enforcement of Judgment | Slander | [ ] 368 Asbestos Personal | [ ] 640 R.R. & Truck | **PROPERTY RIGHTS** | [ ] 470 Racketeer Influenced and |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Injury Product | [ ] 650 Airline Regs. | [ ] 820 Copyrights | Corrupt Organizations |
| [ ] 152 Recovery of Defaulted | Liability | Liability | [ ] 660 Occupational | [ ] 830 Patent | [ ] 810 Selective Service |
| Student Loans | [ ] 340 Marine | **PERSONAL PROPERTY** | Safety/Health | [ ] 840 Trademark | [ ] 850 Securities/Commodities/ |
| (Excl. Veterans) | [ ] 345 Marine Product | [ ] 370 Other Fraud | [ ] 690 Other | | Exchange |
| [ ] 153 Recovery of Overpayment | Liability | [ ] 371 Truth in Lending | | **SOCIAL SECURITY** | [ ] 875 Customer Challenge |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 380 Other Personal | **LABOR** | [ ] 861 HIA (1395ff) | 12 USC 3410 |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | Property Damage | [ ] 710 Fair Labor Standards | [ ] 862 Black Lung (923) | [ ] 891 Agricultural Acts |
| [ ] 190 Other Contract | Product Liability | [ ] 385 Property Damage | Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 892 Economic Stabilization Act |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury | Product Liability | [ ] 720 Labor/Mgmt. Relations | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 730 Labor/Mgmt.Reporting | [ ] 865 RSI (405(g)) | [ ] 894 Energy Allocation Act |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate | & Disclosure Act | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | Sentence | [ ] 740 Railway Labor Act | [ ] 870 Taxes (U.S. Plaintiff | [ ] 900 Appeal of Fee Determination |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ | Habeas Corpus: | | or Defendant) | Under Equal Access to |
| [ ] 240 Torts to Land | Accommodations | [ ] 530 General | [ ] 790 Other Labor Litigation | | Justice |
| [ ] 245 Tort Product Liability | [ ] 444 Welfare | [ ] 535 Death Penalty | | [ ] 871 IRS—Third Party | [ ] 950 Constitutionality of |
| [ ] 290 All Other Real Property | [ ] 440 Other Civil Rights | [ ] 540 Mandamus & Other | [ ] 791 Empl. Ret. Inc. | 26 USC 7609 | State Statutes |
| | | [ ] 550 Civil Rights | Security Act | | [ ] 890 Other Statutory Actions |
| | | [ ] 555 Prison Condition | | | |

## V. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

- [x] 1 Original
  Proceeding
- [ ] 2 Removed from
  State Court
- [ ] 3 Remanded from
  Appellate Court
- [ ] 4 Reinstated or
  Reopened
- [ ] 5 Transferred from
  another district
  (specify)
- [ ] 6 Multidistrict
  Litigation
- [ ] 7 Appeal to
  District
  Judge from
  Magistrate
  Judgment

## VI. CAUSE OF ACTION  (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause
Do not cite jurisdictional statutes unless diversity.)

case arises under 28 U.S.C. Sections 1331, 1332, 1337 and 1367 and U.S.C. Section 2

## VII. REQUESTED IN
COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION
  UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  [ ] Yes  [x] No

## VIII. RELATED CASE(S)
IF ANY

(See instructions):

JUDGE  Sue L. Robinson

DOCKET NUMBER  03-477

DATE  1/17/-06

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

JS 44 Reverse (Rev. 12/96)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

### Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.      (a) Plaintiffs-Defendants. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b.) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.     Jurisdiction. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States, are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.    Residence (citizenship) of Principal Parties. This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.     Nature of Suit. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.      Origin. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a) Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.     Cause of Action. Report the civil statute directly related to the cause of action and give a brief description of the cause.

VII.    Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.   Related Cases. This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

Date and Attorney Signature. Date and sign the civil cover sheet.

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. 06 - 642 .

## ACKNOWLEDGMENT
## OF RECEIPT FOR AO FORM 85

### *NOTICE OF AVAILABILITY OF A*
### *UNITED STATES MAGISTRATE JUDGE*
### *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____ 2 _____ COPIES OF AO FORM 85.

_10 - 17 - 06_

(Date forms issued)

(Signature of Party or their Representative)

JOHN D ROTER

(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action